UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
THOMAS GESUALDI, LOUIS BISIGNANO,
MICHAEL O'TOOLE, MICHAEL C. BOURGAL,
DARIN JEFFERS, JOSEPH A. FERRARA, SR.,
FRANK H. FINKEL, MARC HERBST, DENISE
RICHARDSON, and THOMAS F. CORBETT, as
Trustees and Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust Fund, the
Local 282 Annuity Trust Fund, the Local 282 Job
Training Trust Fund, and the Local 282 Vacation
and Sick Leave Trust Fund,

       Plaintiffs,

   - against -

BLACKRIDGE CONSTRUCTION, LLC a/k/a
BLACKRIDGE CONSTRUCTION LLC,

       Defendant.
-------------------------------------------------------------------x

Civil Action No.:

## COMPLAINT

  Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael C. Bourgal, Darin Jeffers, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, and Thomas F. Corbett, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds"), for their complaint allege as follows:

### INTRODUCTION

  This is an action brought under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA") to collect delinquent contributions and various other sums owed by an employer to employee benefit plans.

00885837.2

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§185(a), 1132(a)(3), 1132(e)(1), 1132(f) and 1145.

2. Venue lies in this district under 29 U.S.C. §1132(e)(2), as the Funds are administered in this district. Venue also lies in this district under 29 U.S.C. §185(a).

## THE PARTIES

3. Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. §1002(21)(A), as they have discretion and control over the assets and administration of the Funds.

4. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

5. The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §186(c)(5).

6. The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union") and providing benefits to eligible participants.

7. The collective bargaining agreements and the Trust Agreement set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Funds and that the Funds are beneficiaries of the collective bargaining and Trust Agreement

terms. Accordingly, the Trustees have legal right to bring suit under 29 U.S.C. §1132(a)(3) and 29 U.S.C. §1145.

8. Blackridge Construction, LLC a/k/a Blackridge Construction LLC ("Blackridge") is, and at all times relevant to this action has been, an "employer" within the meaning of 29 U.S.C. §1002(5) and the Trust Agreement.

## FACTUAL BASIS FOR CLAIM

The Collective Bargaining Agreement, the Trust
<u>Agreement and the Obligation To Contribute to the Funds</u>

9. Blackridge has at all times relevant to this action been party to a collective bargaining agreement with the Union.

10. Blackridge was bound to the Metropolitan Trucker's Association and Independent Trucker's Contract for the period of July 1, 2012 through June 30, 2016 (the "2012 CBA") with the Union, which by its terms ran through June 30, 2016.

11. Blackridge is bound to the Metropolitan Trucker's Association and Independent Trucker's Contract with the Union for the period of July 1, 2016 through June 30, 2020 (the "2016 CBA," with the 2012 CBA, the "CBAs").

12. At all times relevant to this action, the CBAs have required Blackridge to make contributions to the Funds on behalf of its employees who are covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs.

13. Along with the contributions, Blackridge is also required to submit remittance reports to the Funds. The remittance reports provide Blackridge's statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment.

14. The CBAs provide that Blackridge is bound to the Trust Agreement.

15. The Trust Agreement provides that if Blackridge fails to remit contributions by the date due, Blackridge is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

16. The CBAs provide that if an Blackridge fails to remit contributions to the Funds when due, the Funds are entitled to the remedies set forth in Section 502(g)(2) of ERISA.

Remittance Reports

17. The Employer has failed to submit a remittance report reflecting the amount of contributions due for the month of August 2017.

Underpaid Contributions

18. For the period of May through July 2017, Blackridge failed to contribute to the Funds the full amount of contributions due.

19. Through various correspondences, the Funds and their legal counsel requested payment of all outstanding contributions due for May through July 2017.

20. To date, Blackridge has failed to remit payment of outstanding contributions due for May through July 2017, in the amount of $204,806.04 in contributions, $ $6,633.98 in interest, and $40,961.21 in liquidated damages.

Amounts Due on Contributions Paid Late

21. Blackridge paid contributions late for the periods of June, October and November 2015 and May 2016 through July 2017.

22. The Trust Agreement provides that the failure to promptly remit contributions due constitutes a violation of the CBA and Trust Agreement. The Trust Agreement further provides that in such instance, Blackridge is obligated to remit interest, liquidated damages, attorney's fees and costs.

23. Through various correspondences, the Funds and their legal counsel requested payment of interest and liquidated damages due on the late contributions.

24. To date, for the periods of June, October and November 2015 and May 2016 through July 2017, Blackridge has failed to pay $72,094.59 in interest or $405,281.14 in liquidated damages due on the late paid contributions.

Audit

25. Following an examination of Blackridge's books and records for the period from February 2, 2015 through April 3, 2016 ("Audit #17-0266-A1"), the Trustees' auditor issued an audit report reflecting that Blackridge owes $25,693.07 in contributions, $11,918.24 in interest, $11,918.24 in liquidated damages, $1,897.50 in audit fees.

26. Through various correspondences, the Funds and their legal counsel requested payment of the audited deficiency for 17-0266-A1.

27. To date, Blackridge has failed to remit payment of the audited deficiency for 17-0266-A1.

Vacation and Sick Leave Trust Fund Benefits

28. The Employer submitted remittance reports reflecting that for periods from February 2, 2015 to April 3, 2016, employee Claudio Maroto (the "Employee") was in covered employment.

29. The Vacation and Sick Leave Trust Fund relied upon the Employer's remittance reports in determining whether the Employer's employees were eligible for benefits under the terms of the Vacation and Sick Leave Trust Fund's plan of benefits.

30. The Employee submitted claims for benefits and the Vacation and Sick Leave Trust Fund paid $45 in benefits on behalf of the Employee.

31. Upon information and belief, even though the Employee was not eligible for such benefits, the Employer submitted the remittance reports and benefit claims with the intent of causing the Vacation and Sick Leave Trust Fund to pay benefits for the Employee.

32. As a result of the examination of the Employer's books and records for the period from February 2, 2015 to April 3, 2016, the Funds determined that the Employee was not eligible for benefits for a period between February 2, 2015 to April 3, 2016, under the Vacation and Sick Leave Trust Fund's plan of benefits.

33. As a result of the Employer's reporting, the Vacation and Sick Leave Trust Fund paid $45 in benefits to which the Employee was not entitled.

34. Through various correspondences, the Funds and their legal counsel requested reimbursement of the $45.

35. To date, the Employer has failed to remit payment of the $45.

<u>Other Amounts</u>

36. On information and belief, additional contributions, Vacation and Sick Leave Trust Fund Benefits, interest, liquidated damages, audit fees, and attorney's fees and costs will continue to become due and owing by the Employer to the Funds during the pendency of this action.

## **COUNT I — ERISA**

37. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

38. Section 515 of ERISA, 29 U.S.C. §1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

39. Blackridge's failure to pay contributions interest, liquidated damages, and attorney's fees and costs owing to the Funds violates the CBA and the Trust Agreement, which is incorporated into the CBA, and thus gives rise to an action under ERISA Section 515.

40. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [Section 515] in which a judgment in favor of the plan is awarded, the court shall award the plan,
> the unpaid contributions,
> (a)   interest on the unpaid contributions,
> (b)   an amount equal to the greater of
>     (i)   interest on the unpaid contributions or;
>     (ii)  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions],
> (c)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (d)   such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan….

41. The Funds are thus entitled under ERISA Section 502(g)(2) to underpaid contributions, interest, liquidated damages, attorney's fees and costs.

### COUNT II — LMRA

42. Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

43. By failing to pay the contributions and other amounts owing, Blackridge has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

44. The Funds are thus entitled under LMRA Section 301(a) to the unpaid contributions, interest, liquidated damages, attorney's fees and costs.

### COUNT III – RECOVERY OF BENEFITS

45. As a result of the Employer's reporting of the Employee, the Vacation and Sick Leave Trust Fund is entitled to be repaid the $45.00 in benefits to which the Employee was not entitled, plus interest, *see* N.Y. C.P.L.R. §§ 5001, 5004.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment:

1. Ordering Blackridge to pay to the Funds (i) all delinquent contributions owed; (ii) interest on all delinquent and late-paid contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment; (iii) an amount of liquidated damages equal to the greater of (a) interest on the delinquent and late-paid contributions or (b) 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

2. Ordering twhe Employer to repay the Vacation and Sick Leave Trust Fund the $45.00 in benefits to which the Employee was not entitled.

       3.     Providing such other legal and equitable relief as the Court deems proper, including injunctive relief where warranted.

Dated: New York, New York
       November 2, 2017

                            /s/ Tzvi N. Mackson
                            Michael S. Adler
                            Tzvi N. Mackson
                            COHEN, WEISS AND SIMON LLP
                            900 Third Avenue, 21st Floor
                            New York, NY 10022-4869
                            (212) 563-4100

                            Attorneys for Plaintiffs